UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MICHAEL MILES, # 264563

     Petitioner,                  Case No. 2:20-cv-12897

v.                                 HON. BERNARD A. FRIEDMAN

MICHELLE FLOYD,[1]

     Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY

Jason Michel Miles, ("petitioner"), confined at the Cooper Street Correctional Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed by attorney Stuart Gary Friedman, petitioner challenges his conviction for two counts of second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(A). For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

_____

[1] The Court amends the caption to reflect that the proper respondent is Michelle Floyd, the current warden at the prison where petitioner is incarcerated. *Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); Rule 2(a), Rules Governing § 2254 Cases.

# I. Background

Petitioner was convicted following a jury trial in the Oakland County Circuit Court.

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> Defendant was married to the victim's mother for approximately three years. Several years after the divorce, when the victim was a teenager, the victim asked to see a therapist. The victim's mother selected a therapist, Karen Schulte, based on her availability and the fact that Schulte accepted her insurance. At her first appointment with Schulte, in response to questions asked on a standardized intake form, the victim disclosed that she had been sexually abused. Schulte, a mandatory reporter, reported the victim's disclosure to the Department of Health and Human Services (DHHS). Subsequently, Detective Kristine Shuler asked defendant if he would come to the police station and answer a few questions. Defendant agreed. During the interview, which lasted approximately 10 minutes, defendant was confronted with the allegations of sexual abuse. Detective Shuler testified at trial that, upon hearing the allegations, defendant's demeanor changed, and he stated that he would need to speak with an attorney. The prosecutor did not seek to admit as evidence any statements defendant made during the interview or a recording of the interview. Defense counsel, however, insisted that the entire video recording of the interview should be seen by the jury and the trial court permitted it.

> The victim testified that defendant would normally abuse her twice a day, virtually every day, during defendant's marriage to the victim's mother. The victim's memories of the abuse had been suppressed for some time and came back to her in pieces. According to the victim, she could remember segments of various incidents of abuse during her childhood. Defendant testified in his own defense and maintained that the allegations were false. Defendant explained that his reaction to the allegations during the interview was the result of his

2

shock and dismay at hearing false accusations of such magnitude being levied against him.

The defense theory pursued at trial was that the victim intentionally fabricated the allegations of sexual abuse as a way to explain behavioral issues she was having at the time she sought therapy. This defense was largely successful, resulting in the jury acquitting defendant of four counts of CSC-I related to the most graphic instances of alleged abuse. As noted above, the jury found defendant guilty of two counts of CSC-II related to comparatively less graphic instances of abuse. Defendant subsequently moved the trial court for a new trial, arguing that his counsel was ineffective for failing to seek the opinion of an expert in suggestibility and for making several errors at trial. In the motion, defendant also asked the trial court to order that the victim's counseling records be released to defendant or, alternatively, that the trial court review the records *in camera* to determine whether disclosure was appropriate. The trial court denied defendant's motion for a new trial and denied defendant's request to order an *in camera* review or disclosure of the victim's therapy records.

*People v. Miles*, No. 335731, 2018 WL 3440790, at *1 (Mich. Ct. App. July 17, 2018) (per curiam); *lv. den.* 926 N.W.2d 806 (Mich. 2019); *reconsid. den.* 932 N.W.2d 609 (Mich. 2019).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The State's use of Petitioner's pre-*Miranda* invocation of Petitioner's right to remain silent as substantive evidence of guilt violated Petitioner's rights under the Fifth and Fourteenth Amendment. Trial counsel's failure to object to the same rendered him ineffective.

II. Petitioner was denied his right to a fair trial and to the effective assistance of counsel as guaranteed by both the Michigan and the United States Constitutions (U.S. Const. amend. VI) where trial counsel failed to investigate a defense; failed to present essential expert witness testimony; failed to object to prosecutorial misconduct including clearly inadmissible and highly prejudicial opinion testimony; failed to

3

object to impermissible references to Petitioner's assertion of his right to remain silent; and failed to seek counseling records.

III. The trial court erred in denying Petitioner's request for the complainant's therapy records in his motion for new trial, where the records most certainly contained information that would have affected the outcome of Petitioner's case, or minimally, whether the court should have conducted an *in-camera* review in accordance with *People v Stanaway*, and where trial counsel was ineffective for failing to make said motion.

IV. The misconduct of the prosecutor throughout trial denied Defendant his right to a fair trial as guaranteed [by] the Due Process Clause of the US Constitution.

V. At minimum, Petitioner should be granted a Certificate of Appealability.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (cleaned up).

### III. Discussion

### A. The pre-arrest silence claim.

Petitioner first claims that the prosecutor improperly used his pre-arrest and pre-*Miranda* silence either as substantive or impeachment evidence. When petitioner was confronted by the detective with the allegations against him, petitioner refused to speak about the matter and stated that he needed to contact an attorney. The prosecutor argued that petitioner's actions were inconsistent with that of an innocent person.

5

The Michigan Court of Appeals rejected the claim as follows:

> There is no question that a defendant's post-arrest, post-*Miranda* silence may not be used substantively or for impeachment purposes. But this case does not concern a defendant who was under arrest or one who was given *Miranda* warnings. Rather, defendant voluntarily chose to speak with Detective Shuler. No one disputes that, during the entire interview, defendant was not under arrest, not in police custody, and not given *Miranda* warnings. A defendant's silence or unresponsive conduct is not constitutionally protected where it does not occur during a custodial interview or in reliance on *Miranda* warnings. Accordingly, there can be no constitutional violation here.

*People v. Miles*, 2018 WL 3440790, at *11 (cleaned up).

There is no indication that petitioner was under arrest or had been advised of his *Miranda* rights when he made these statements or engaged in this conduct. Petitioner had voluntarily come to the police station to speak with the police and was not told he was under arrest. The Supreme Court has held that prosecutors in a criminal trial may use a defendant's pre-arrest silence as substantive evidence of his guilt so long as the defendant did not expressly invoke his right to remain silent. *Salinas v. Texas*, 570 U.S. 178, 183-84, 191 (2013); *see also Abby v. Howe*, 742 F.3d 221, 228 (6th Cir. 2014). Moreover, Supreme Court caselaw has established that a defendant normally does not invoke the privilege against self-incrimination simply by remaining silent. *Salinas*, 570 U.S. at 186. In addition, a prosecutor may use a defendant's pre-arrest silence to impeach the defendant's credibility. *Jenkins v. Anderson*, 447 U.S. 231, 240 (1980).

In the present case, petitioner was neither under arrest nor had he been advised of his *Miranda* rights when he told the detective that he no longer wished to talk with her and wanted to speak to an attorney.  Petitioner did not expressly invoke his right against self-incrimination simply by telling the detective that he no longer wanted to talk to her.  The prosecutor's use of petitioner's pre-arrest silence was not impermissible nor would it entitle petitioner to habeas relief.

Moreover, any admission of petitioner's pre-arrest silence in this case would have been harmless error, at best, in light of the significant evidence against petitioner.  *See United States v. Banks*, 29 F. App'x 276, 284 (6th Cir. 2002).  The victim testified at great length about the sexual abuse that petitioner perpetrated upon her. (ECF No. 7-6, PageID.614-28).  Melanie Woodrich's testimony also provided additional support for the victim's allegations.  Melanie testified that petitioner expressed interest in the growth of women's breasts and that she had come home one day to find petitioner in the bathroom with the victim, who was naked.  Petitioner tried to act like he was helping the victim with a foot treatment, even though the victim had never had trouble treating herself.  (ECF No. 7-7, PageID.655).  In light of the compelling evidence in this case, the admission of petitioner's pre-arrest silence was at most harmless error.

**B. Claims # 1 and # 2.  The ineffective assistance of counsel claims.**

As part of petitioner's first claim and again in his second claim, petitioner alleges he was denied the effective assistance of trial counsel.

To prevail on his ineffective assistance of counsel claims, petitioner must show that the state court's conclusion regarding these claims was contrary to, or an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984).  *See Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).  *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. at 687.

As part of his first claim, petitioner argues that trial counsel was ineffective for failing to object to the prosecutor's use of petitioner's pre-arrest silence.

It was permissible for the prosecutor to use evidence of petitioner's pre-arrest silence, thus counsel was not ineffective for failing to object to the admission of this evidence.  *Abby v. Howe*, 742 F.3d at 228.

Petitioner in his second claim argues that trial counsel was ineffective for failing to call an expert witness to testify about witness susceptibility and memory.

The Michigan Court of Appeals rejected this claim as follows:

Defendant first argues that his counsel was ineffective for failing to consult with an expert in suggestibility and present this evidence at trial. As support for his argument, defendant points this Court to his motion for a new trial, to which he attached the affidavit of Dr. Katherine

Jacobs.  Generally, Dr. Jacobs opined that she could have testified that the victim's memory was unreliable, and that, through improper interview or counseling techniques, or through the suggestion of others around her, she could have been reporting tainted or even false memories.  According to defendant and Dr. Jacobs, trial counsel should have looked into this issue further.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Defendant also sent his counsel a pre-trial email asking if it would be possible to "get a specialist that can speak to how memories can be corrupted over time and how cases like these can lead to witch hunts?"  Defense counsel responded later that day, explaining, "We hired one already and his opinion was the same as the expert being called by the government.  I can look for someone else and get a second opinion."  Specifically, defense counsel had already consulted with Dr. Daniel Swerdlow-Freed.  Dr. Swerdlow-Freed had been retained as an expert in a number of child sexual-abuse cases, and in some, has been retained in order to testify regarding exactly the same type of issues that Dr. Jacobs discussed in her affidavit—the creation of false memories through suggestion or other external forces.  See, e.g., *People v. Carver*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2017 (Docket No 328157); *People v. Chevis*, unpublished per curiam opinion of the Court of Appeals, issued October 8, 2013 (Docket No. 304358).  Therefore, the record confirms that defense counsel did, in fact, consult with an expert in suggestibility, but that the expert's opinion may not have been favorable to defendant.  It is clear to this Court that defense counsel investigated the matter and, having concluded that an expert's testimony would not be beneficial to defendant, made the strategic decision to pursue a different trial strategy.

*People v. Miles*, 2018 WL 3440790, at \*3 (cleaned up).

On habeas review, the question is whether any fairminded jurist could agree with the Michigan Court of Appeals that counsel's failure to seek an additional expert witness to testify about victim's susceptibility satisfied the reasonableness standard enunciated in *Strickland*.  *Davis v. Carpenter*, 798 F.3d 468, 473 (6th Cir.

2015).  "That standard is a general one, governing a great blue-water of attorney conduct: from pre-trial discovery to plea-bargaining, from in-court trial tactics to post-verdict motions, from direct appeals to post-conviction challenges.  The Supreme Court has charted only parts of that expanse." *Id.*  The Sixth Circuit in *Davis v. Carpenter*, 798 F.3d 468 (6th Cir. 2015), concluded that when faced with the question of whether trial counsel was ineffective for failing to seek additional experts to support the defense theory that the victim in that case had died after being accidentally dropped, the Tennessee Court of Appeals found itself in "open water."

> The Supreme Court has never reached the specific questions that the Tennessee courts answered in this case: how many experts must an attorney contact before proceeding without one, what kinds of outside advice can the attorney rely upon, and ultimately how hard must he try.  The only buoy in sight, far off on the horizon, was the Court's guidance in *Strickland* itself that counsel's efforts must be within "the wide range of reasonable professional assistance [.]"  466 U.S. at 689, 104 S. Ct. 2052.  That rule is as general as they come.  And "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L.Ed.2d 938 (2004).

*Id.* at 473–74.

The Sixth Circuit concluded that the Tennessee Court of Appeals did not unreasonably apply *Strickland* by concluding that trial counsel's efforts to find a medical expert to testify at a second murder trial that the infant's fatal injuries could have been sustained when the habeas petitioner accidentally dropped his child were professionally reasonable. *Id.* at 474.  Counsel tried to convince an expert from the first trial to testify at the second trial and worked side-by-side with the first expert's

attorney to find another expert when the first expert refused to testify at the second trial. Counsel also called one or two doctors himself. *Id.* Although the Sixth Circuit acknowledged that trial counsel could have done more than he did to find another expert, fairminded jurists could conclude that counsel's efforts to find an expert "fell in the permissible zone between 'best practices' and outright incompetence." *Id.*

"Effective assistance [did] not require counsel to continue contacting experts until he found one . . . willing to testify against the prosecution's theory of the case." *Flick v. Warren*, 465 F. App'x 461, 465 (6th Cir. 2012) (petitioner's counsel in a second-degree murder prosecution was not ineffective for failing to call an expert to challenge the science underlying Shaken Baby Syndrome, after counsel had contacted three doctors seeking help with the case and had received unfavorable responses from all three). Petitioner's trial counsel did consult with an expert witness, who informed counsel that his opinion regarding the victim would be the same as the prosecution's expert witness.

Moreover, the Court notes the victim was sixteen years old when she reported the sexual assaults to the police and was interviewed by Karen Schulte. The victim was born on October 2, 1999. (ECF No. 7-6, PageID.613). The victim spoke to Schulte in October of 2015, when she was in the eleventh grade. (*Id.*, PageID.631). Schulte testified that she met with the victim for the first time on October 6, 2015, which would have been right after the victim turned sixteen. (ECF No. 7-7,

PageID.665). Petitioner was not prejudiced by counsel's failure to have Dr. Jacobs testify as an expert witness on the susceptibility of child victims and the importance of following forensic protocol when interviewing young children because this was much less of a concern in this case involving a sixteen-year-old victim. *See Spaulding v. Larson*, 704 F. App'x 475, 483 (6th Cir. 2017).

Petitioner next claims that trial counsel was ineffective for failing to object to Detective Shuler's testimony explaining her investigatory process and how she decided to submit petitioner's case to the prosecutor's office for an authorization to file criminal charges. Petitioner argues that such testimony implied the detective's belief that the victim's allegations were credible. Petitioner argues that it was improper to admit the detective's lay opinion which essentially expressed her belief that petitioner was guilty.

The Michigan Court of Appeals rejected petitioner's claim, finding that it was not improper for Detective Shuler to testify about the steps she took to investigate the case, because "[i]t is not objectionable for officers to testify regarding the 'steps of their investigations from their personal perceptions.'" *People v. Miles*, 2018 WL 3440790, at *4 (quoting *People v. Heft*, 829 N.W.2d 266, 275 (Mich. 2012)). Secondly, the Michigan Court of Appeals concluded that petitioner was not prejudiced by the admission of this testimony because "[a]ny juror would have understood, from the simple fact that the case was being tried, that Detective Shuler

believed that there was merit to the victim's testimony." *Id.* Finally, the Michigan Court of Appeals concluded that defense counsel made a strategic choice not to object to Detective Shuler's testimony, because the objection was not likely to succeed and if it had succeeded, would have highlighted Detective Shuler's belief that the victim was telling the truth. *Id.*

The Michigan Court of Appeals concluded that Detective Shuler's testimony concerning the investigatory process was admissible. Counsel is not ineffective for failing to object to admissible evidence. *United States v. Sanders*, 404 F.3d 980, 986 (6th Cir. 2005).

> When counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect. That presumption has particular force where a petitioner bases his ineffective-assistance claim solely on the trial record, creating a situation in which a court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.

*Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (cleaned up). In the present case, counsel may very well have made a strategic decision not to object to Detective Shuler's testimony, so as to avoid bringing undue attention to the evidence. *See Cobb v. Perini*, 832 F.2d 342, 347-48 (6th Cir. 1987). Petitioner is unable to show that counsel's failure to object to this evidence – thus drawing attention to it – was deficient, so as to support an ineffective assistance of counsel claim. *See Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010).

Petitioner next claims that trial counsel was ineffective for failing to move prior to trial to obtain the victim's psychological records or at least ask the judge to do an *in camera* review of the records to determine whether or not the records were admissible. Petitioner's appellate counsel did file a post-trial motion for the production and review of these records, (ECF No. 7-10, PageID.780-82), which was denied, (ECF No. 7-11, PageID.846-47). Petitioner also raises the judge's denial of these records as an independent claim in Claim # III, *infra.*

The Michigan Court of Appeals rejected the ineffective assistance claim in conjunction with rejecting petitioner's independent claim that the judge erred in denying petitioner's post-trial request for these records as follows:

> Defendant argues that he could have made a pre-trial showing that the counseling records contained material information necessary to his defense, and that he was entitled to an *in camera* review of the records. We disagree. As it pertains to whether counsel should have sought the records before trial, the record shows that defendant could not have made the required showing. Defendant's argument for disclosure or inspection of the records, which no one disputes are privileged, is that these records could have furthered the theory expounded in Dr. Jacobs's affidavit—the victim's memories were the result of suggestion or other external influences. As we have already explained, however, Dr. Jacobs's theory would have run contrary to defense counsel's largely successful trial strategy—the victim was making false accusations to cover behavioral problems. Thus, had defense counsel attempted to seek the records before trial, defense counsel would have been unable to explain how the records contained any information necessary to the defense, and the pretrial motion would have been rejected by the trial court. Similarly, there was no need to inspect or otherwise entertain a request for disclosure of the records in post-trial proceedings.

*People v. Miles*, 2018 WL 3440790, at *5 (internal citation omitted).

Petitioner was not prejudiced by trial counsel's failure to move for an *in camera* review of the victim's counseling records because he was unable in this case to meet the threshold under Michigan law to have the judge conduct an *in camera* review of these records. *See Brown v. Smith*, 551 F.3d 424, 430-31 (6th Cir. 2008). In *Brown v. Smith*, 551 F.3d 424 (6th Cir. 2008), defense counsel had an indication that the counseling records contained exculpatory information and that the victim's therapist disbelieved the victim's allegations; such was not the case here. *See id.* The fact that the trial judge denied the post-trial request by petitioner's appellate counsel for the victim's counseling records indicates that trial counsel would not have prevailed in requesting an *in camera* review of the records. Petitioner is not entitled to relief on this claim.

Petitioner lastly contends that defense counsel was ineffective for failing to object to the prosecutorial misconduct that he alleges in Claim # IV, *infra.* As mentioned below, petitioner failed to show that the prosecutor's questions and remarks were improper. To show prejudice under *Strickland* for failing to object to prosecutorial misconduct, a habeas petitioner must show that but for the alleged error of his trial counsel in failing to object to the prosecutor's improper questions and arguments, there is a reasonable probability that the proceeding would have been different. *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001). The prosecutor's

remarks did not deprive petitioner of a fundamentally fair trial; he cannot show that he was prejudiced by counsel's failure to object. *Slagle v. Bagley*, 457 F.3d 501, 528 (6th Cir. 2006). Petitioner is not entitled to relief on his second claim.

### C. Claim # 3. The psychological records claim.

Petitioner next alleges that the trial judge erred in refusing to order the production of the victim's counseling records or to conduct an *in camera* review of the records. As mentioned above, the Michigan Court of Appeals rejected this claim. In so doing, the Michigan Court of Appeals noted that petitioner failed to make a sufficient showing under Michigan law for the disclosure of, or *in camera* review of, these records. *People v. Miles*, 2018 WL 3440790, at *5.

There is no clearly established federal law that requires that a defendant be permitted to use confidential, privileged information to impeach a witness. In *Pennsylvania v. Ritchie*, 480 U.S. 39, 53–54 (1987), a plurality of the Supreme Court ruled that a defendant's right of cross-examination was not violated when a child protective service agency refused to turn over its confidential records to him, on the ground that the records were privileged under state law. *Id.* at 43-46. In so ruling, the Supreme Court stated, "[t]he ability to question adverse witnesses . . . does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony." *Id.* at 53.

The Sixth Circuit set forth the rule established by *Ritchie* as follows:

> The clearly established "rule" of *Ritchie*, then, is that, given a privilege statute like Pennsylvania's, a defendant is "entitled to have a government social services file reviewed by the trial court to determine whether it contains information that probably would have changed the outcome of his trial," but only if the defendant has "established a basis for his claim that it contains material evidence," e.g., by making "some plausible showing of how the testimony would have been both material and favorable to the defense."

*Renusch v. Berghuis*, 75 F. App'x 415, 424 (6th Cir.2003) (cleaned up).

The Michigan Supreme Court established its own, more stringent procedure for trial courts to conduct an *in camera* review of privileged records, requiring an *in camera* review if the defendant demonstrates a "reasonable probability" that the records will "likely contain material information necessary to the defense." *People v. Stanaway*, 521 N.W.2d 557, 562 (Mich. 1994).

In *Renusch*, the Sixth Circuit held that the Michigan state court's application of *Stanaway's* more demanding "reasonable probability" standard to deny an *in camera* review of a victim's counseling records did not constitute an unreasonable application of *Ritchie*. In so doing, the Sixth Circuit concluded that *Ritchie* did not clearly establish a specific standard for the state courts to follow. *Renusch*, 75 F. App'x at 424, n. 6. The Sixth Circuit ruled that by relying on *Stanaway*, the Michigan Court of Appeals' decision in *Renusch* did not violate clearly established Supreme Court law:

> The *Stanaway* court adequately distinguished *Ritchie*, and hence in Renusch's case the Michigan Court of Appeals did not act contrary to clearly established Supreme Court precedent by applying *Stanaway's*

"reasonable probability" standard, as opposed to the "plausible showing" standard referred to in *Ritchie*. We need not decide whether the Michigan courts have properly distinguished *Ritchie.* It is sufficient to conclude, as we do, that the *Stanaway* court's distinguishing of *Ritchie* was at least reasonable. The decision of the Michigan Court of Appeals applying the *Stanaway* standard is thus not contrary to, nor an unreasonable application of, Supreme Court precedent.

*Id.* at 425.

The Sixth Circuit concluded that the Michigan Court of Appeals' determination that the habeas petitioner in *Renusch* was not entitled to *in camera review* of a child victim's counseling records did not warrant habeas relief where the state court found that the petitioner did not set forth any good faith basis for believing that false accusations were ever actually made, nor how those events of the victim's life would have resulted in false accusations. *Renusch*, 75 F. App'x at 423.

The Michigan Court of Appeals' determination here that petitioner failed to meet the standard under *Stanaway* for the disclosure or an *in camera* review of the victim's counseling records was not an unreasonable application of clearly established federal law nor an unreasonable determination of the facts. Petitioner is not entitled to relief on his third claim.

### D. Claim # 4. The prosecutorial misconduct claim.

Petitioner finally alleges he was denied a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (cleaned up). A prosecutor's improper comments will be held to violate a criminal defendant's constitutional rights only if they "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (cleaned up). Prosecutorial misconduct will thus form the basis for habeas relief only if the conduct was so egregious as to render the entire trial fundamentally unfair based on the totality of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974). To obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (cleaned up).

Petitioner first contends that it was improper for the prosecutor to question him about the issue of his interest in adolescent macromastia, claiming that the questions were irrelevant and misleading.

The Sixth Circuit has noted that there is "no Supreme Court authority supporting the [proposition] that a prosecutor's questions simply calling for answers that are inadmissible due to relevancy constitute prosecutorial misconduct that rises

to the level of a federal Due Process violation." *Wade v. White*, 120 F. App'x 591, 594 (6th Cir. 2005). Petitioner would not be entitled to habeas relief even if the prosecutor's questions about petitioner's interest in adolescent macromastia were irrelevant. *See id.*

Petitioner argued before the Michigan Court of Appeals that the prosecutor's questions on this subject violated M.R.E. 404(b)'s prohibition on the admission of prior bad acts evidence. This would not entitle petitioner to habeas relief. Although F.R.E. 404(b) and its state counterpart M.R.E. 404(b) generally prohibit a prosecutor from questioning a defendant about prior bad acts, the United States Supreme Court has never held that the federal constitution forbids a prosecutor from doing so, thus the Michigan Court of Appeals' rejection of petitioner's prosecutorial misconduct claim would not entitle him to habeas relief. *See Wagner v. Klee*, 620 F. App'x 375, 378 (6th Cir. 2015).

Petitioner also claims that the prosecutor mischaracterized the record by accusing petitioner of bringing up the issue of adolescent macromastia, when the prosecutor, in fact, brought the issue up earlier. The Michigan Court of Appeals rejected this claim finding that "the term had been brought up in the victim's mother's testimony, and the prosecutor responded appropriately. Thus, the prosecutor did not commit misconduct during this colloquy." *People v. Miles*, 2018

WL 3440790, at *7.  The Michigan Court of Appeals' decision was reasonable, precluding relief.

Petitioner finally argues that the prosecutor improperly used a civic duty argument in her closing remarks when she stated in rebuttal that "a verdict of not guilty means you don't believe [the victim], you believe she came to court and made this all up."

With regards to civic or societal duty arguments, the Sixth Circuit has noted that, "unless calculated to incite the passions and prejudices of the jurors, appeals to the jury to act as the community conscience are not per se impermissible." *Byrd v. Collins*, 209 F.3d at 486, 539 (6th Cir. 2000) (cleaned up).  In this case, the prosecutor's "less-than-pointed remarks" did not rise to the level of remarks designed to incite prejudice in a jury, thus defeating petitioner's "civic duty" argument claim.  *See Puetas v. Overton*, 168 F. App'x 689, 701 (6th Cir. 2006). Petitioner's civic duty argument claim would also be defeated by the fact that the trial court instructed the jury that they were not to let sympathy or prejudice influence their decision.  (ECF No. 7-7, PageID.714).  *Cameron v. Pitcher*, No. 99-CV-74906-DT, 2001 WL 85893, *10 (E.D. Mich. Jan. 4, 2001).  Petitioner is not entitled to relief on his fourth claim.

## IV.  Conclusion

The Court denies the petition for a writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

Although the Court believes that its decision to deny habeas relief was correct, the Court will nonetheless grant petitioner a certificate of appealability on three of his ineffective assistance of counsel subclaims: (1) that trial counsel was ineffective for failing to call Dr. Jacobs as an expert witness on the issue of the victim's memory and susceptibility to improper forensic interview techniques, (2) that counsel was ineffective for playing to the jury an unedited recording of a police interview in which he twice asked to see an attorney and then called a halt to the interview, and (3) that trial counsel was ineffective for failing to move prior to trial to obtain an *in camera* review of the victim's counseling records. Judge Shapiro of the Michigan Court of Appeals in his dissenting opinion believed that the majority of the Michigan Court of Appeals erred in rejecting these three claims without first ordering the trial court to order an evidentiary hearing pursuant to *People v. Ginther*, 212 N.W.2d 922

(Mich. 1973).  *People v. Miles*, No. 2018 WL 3440790, at *11 (Shapiro, J., dissenting).

"When a state appellate court is divided on the merits of the constitutional question, issuance of a certificate of appealability should ordinarily be routine." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011).  The fact that Judge Shapiro dissented from the majority's decision regarding these three ineffective assistance of counsel subclaims shows that jurists of reason could decide these three ineffective assistance of counsel claims differently or that the issues deserve encouragement to proceed further.  *See Robinson v. Stegall*, 157 F. Supp. 2d 802, 820, n. 7, 824 (E.D. Mich. 2001) (habeas petitioner entitled to certificate of appealability from district court's determination that state appellate court reasonably applied federal law in determining that any Confrontation Clause error was harmless, where one judge on the Michigan Court of Appeals dissented and indicated that he would have reversed petitioner's conviction; dissent showed that a reasonable jurist found that the issue should have been decided differently).  Accordingly, the Court grants a certificate of appealability on these three ineffective assistance of counsel claims.

Petitioner is not entitled to a certificate of appealability on his remaining claims because he failed to make a substantial showing of the denial of a federal constitutional right.  *See Dell v. Straub*, 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002).

## V.  ORDER

**IT IS ORDERED** that:

(1) the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE**.

(2) **IT IS FURTHER ORDERED** that a certificate of appealability is **GRANTED** with respect to petitioner's claims that: (A) trial counsel was ineffective for failing to call Dr. Jacobs as an expert witness, (B) counsel was ineffective for playing to the jury an unedited recording of a police interview in which he twice asked to see an attorney and then called a halt to the interview, and (C) trial counsel was ineffective for failing to move prior to trial to obtain an *in camera* review of the victim's counseling records.  A certificate of appealability is **DENIED** regarding petitioner's remaining claims.

**SO ORDERED.**

Dated: January 18, 2024
    Detroit, Michigan

s/Bernard A. Friedman
BERNARD A. FRIEDMAN
SENIOR U.S. DISTRICT JUDGE